STATE of Arkansas *v.* Tiffany ASHLEY

CR 01-774                                             66 S.W.3d 563

Supreme Court of Arkansas
Opinion delivered February 7, 2002

*Mark Pryor*, Att'y Gen., by: *Kent G. Holt*, Ass't Att'y Gen., for appellant.

*Hurst Law Office*, by: *Q. Byrum Hurst, Jr.*, for appellee.

W.B. "DUB" ARNOLD, Chief Justice. The appellee, Tiffany Ashley, was charged and convicted of public sexual indecency in Garland County Municipal Court. She appealed the municipal court conviction to Garland County Circuit Court, where the trial court granted Ashley's order for dismissal. The State appeals from the circuit court's order granting Ashley's motion to dismiss. Here, the State questions the trial court's application of Ark. Code Ann. § 5-14-111(b) (Repl. 1997) to the facts at hand and not its interpretation, so the appeal must be dismissed. In so holding, it is unnecessary to reach the State's argument that the trial court erred in ruling that the establishment has taken itself out of the statutory definition of public place or public view by hanging a bead curtain where the proscribed acts occurred.

Appellee, Tiffany Ashley, worked as an exotic dancer at Centerfold Club in Hot Springs. In May 2000, the Hot Springs Police Department conducted undercover investigations of various night clubs, including Centerfold Club. The interior of the Centerfold Club has a stage where most of the dancers employed there dance topless. The club, also, has another area that is surrounded by a curtain of beads. Ashley was arrested and charged with public sexual indecency based on an arrest warrant alleging that an undercover officer observed, at a particular angle, Ashley and another individual, inside the beaded area, as she performed a lap dance for the patron.

Prior to trial in circuit court, Ashley filed a motion to dismiss the charge of public sexual indecency against her. Following a hearing, the trial court granted her motion to dismiss the charge based on the evidence presented, and found "all acts of sexual contact, as defined by the Code, occurred in a separate area or room within which only the participants were present. The view from the main club area into the separate area or room was substantially or totally obscured." The State contends that the trial court erred in ruling that the offense of public sexual indecency be dismissed. The State claims that the evidence presented to the trial court was sufficient to constitute consideration as a public place or in public view and, as such, the trial court should not have dismissed the charge of public sexual indecency. The State argues that because Centerfold Club is a public place, the trial court erred in ruling that

the establishment's beaded curtain area had taken itself out of the statutory definition of public place or public view. The State requests this court to vacate the circuit court's order of dismissal, reverse, and remand the case back to Garland County Circuit Court for trial on the charge of public sexual indecency.

We must first raise the question of whether this appeal is properly before this court. Specifically, we must determine whether the correct and uniform administration of justice requires us to review this appeal. Ark. R. App. P.—Crim. 3(c). *State v. Guthrie,* 341 Ark. 624, 19 S.W.3d 10 (2000). In criminal cases, we accept appeals by the State in limited circumstances. *State v. McCormack,* 343 Ark. 285, 34 S.W.3d 735 (2000). This court has held our review of a State appeal is not limited to cases that would establish precedent. *State v. Gray,* 330 Ark. 364, 955 S.W.2d 502 (1997). Moreover, there is a significant and inherent difference between appeals brought by criminal defendants and those brought on behalf of the State. The former is a matter of right, whereas the latter is not derived from the Constitution, nor is it a matter of right, but is granted pursuant to Rule 3. *State v. Guthrie, supra; State v. McCormack; supra.* We accept appeals by the State when our holding would be important to the correct and uniform administration of the criminal law. Rule 3(c). As a matter of practice, this court has only taken appeals which are narrow in scope and involve the interpretation of law. *State v. Banks,* 322 Ark. 344, 909 S.W.2d 634 (1995). Where an appeal does not present an issue of interpretation of the criminal rules with widespread ramifications, this court has held that such an appeal does not involve the correct and uniform administration of the law. *State v. Harris,* 315 Ark. 595, 868 S.W.2d 488 (1994).

Appeals are not allowed merely to demonstrate the fact that the trial court erred. *State v. Stephenson,* 330 Ark. 594, 955 S.W.2d 518 (1997); *State v. Spear and Boyce,* 123 Ark. 449, 185 S.W. 788 (1916). Thus, where the resolution of the issue on appeal turns on the facts unique to the case, the appeal is not one requiring interpretation of our criminal rules with widespread ramification, and the matter is not appealable by the State. *State v. Guthrie, supra; State v. Howard,* 341 Ark. 640, 19 S.W.3d 4 (2000); *State v. Gray,* 330 Ark. 364, 955 S.W.2d 502 (1997); *State v. Edwards,* 310 Ark. 516, 838 S.W.2d 356 (1992) ("Here, the State questions the trial court's application of our rule to the facts at hand and not its interpretation, so the appeal must be dismissed."). This court will not even accept mixed questions of law and fact on appeal by the State. *State v. Gray, supra; State v. Edwards, supra; State v. Hart,* 329 Ark. 582, 952

S.W.2d 138 (1997) ("Because the issue presented in this appeal involves a mixed question of law and fact, an interpretation of our rules with widespread ramifications is simply not at issue here."). Likewise, where an appeal raises the issue of application, not interpretation, of a statutory provision, it does not involve the correct and uniform administration of the criminal law and is not appealable by the State. *State v. Jones*, 321 Ark. 451, 903 S.W.2d 170 (1995); *State v. Mazur*, 312 Ark. 121, 847 S.W.2d 715 (1993).

Here, the State's argument is based entirely on the application of the law to the facts and in no way raises an issue of statutory interpretation. The trial court held a hearing on Ashley's motion to dismiss, during which the parties offered a proposed stipulation. This stipulation contained the following information:

> Once inside, the Defendants, or most of them would dance topless on a stage. Located on the inside of a club would be another area which in the instance of Playmates and Centerfold is surrounded by beads as a curtain to make the area private where a dancer can perform a "lap dance." Defendants would contend that it is difficult to observe anyone in this area; however, State's witnesses would testify that it was possible at some angles to see from the outside what was occurring on the inside of this area.

At the hearing on Ashley's motion to dismiss, Ashley asserted two main arguments for dismissal of the public sexual indecency charge. First, Ashley cited the definition of sexual contact being "any act of sexual gratification involving the touching, directly or through clothing, of the sex organs or buttocks or anus of a person or the breast of a female." Ark. Code Ann. § 5-14-101(6) (Repl. 1997). Ashley contended that the Legislature specifically said a sex organ and the breast of a female, thus implying buttocks or anus of a person or the breast of a female are not sex organs. Second, Ashley declared the beaded area of the club was private, therefore she did not violate Ark. Code Ann. § 5-14-111(c). Ashley argued that the Legislature, in referring to a public place, does not mean the exact location of the place as it is referring to the general public protection from the possibility of being exposed to the viewing or to the viewing of acts that they do not want to be exposed to. Here, the beaded area is set up as a private area within the club, therefore the general public is not exposed to the area, nor do substantial numbers of people have access to the area.

The trial court also heard arguments from the prosecutor asserting that the beaded area was not a private place. The prosecutor introduced the affidavit of an undercover police officer setting out probable cause for an arrest warrant on the charge of public sexual indecency for Ashley. The affidavit included "[t]he affiant observed the defendant perform what is called a 'private dance' with another patron of the establishment. The defendant took the patron to a room surrounded by tassels which were being suspended by the ceiling area. . . ." The State maintains that because the undercover officer could view the acts inside the beaded area, so could other members of the general public.

After the hearing, the trial court found the acts performed by Ashley occurred in a separate area or room within which only the participants were present. The view from the main club area into the separate area or room was substantially or totally obscured, therefore the sexual contact did not occur in a public place or public view. Therefore, the trial court dismissed the public sexual indecency charge against Ashley. It is from this dismissal order that the State seeks an appeal with this court. The State argues in its brief to this Court that "[t]he circuit court clearly misapplied the law in finding that the portion of the nightclub where the lap dances were being performed was not a 'public place'. . ."

■ However, it is clear under Arkansas law that the trial court acted within its discretion in making an evidentiary decision based on the motions, briefs in support of motions, stipulations, and oral arguments. This appeal by the State turns on the facts unique to this particular case, therefore it does not require interpretation of criminal rules with widespread ramifications. Accordingly, this Court does not accept this appeal by the State under Ark. R. App. P.—Crim. 3(c). The trial court's order to dismiss was within its discretion, therefore we do not accept this appeal because it does not involve the correct and uniform administration of the law, only the application of the law.

Appeal dismissed.

GLAZE, J., dissents.

TOM GLAZE, Justice. If this court is unable to review this State appeal under Ark. R. App. P.—Crim. 3(c), then we might as well remove the rule from our Rules of Appellate Criminal Procedure because no State appeal will qualify. Simply stated, Rule 3 provides that if the Attorney General is satisfied that error

has been committed to the State's prejudice and that the correct and uniform administration of the criminal law requires review, the Attorney General may appeal. Here, the Attorney General has satisfied himself that error in this case has occurred, and all he needs to show is that the uniform administration of the criminal law requires review. Both the State and the defendant Tiffany Ashley stipulated to the facts in this case, which leaves our court only to interpret the applicable law covering Arkansas's public sexual indecency statute, Ark. Code Ann. § 5-14-111(a)(3) (Repl. 1997).

Ms. Ashley is an exotic dancer who performs a striptease and other acts at the Centerfold Club, a private business in Hot Springs, Arkansas. Based on the stipulated facts, the circuit court found that Ashley had performed a "lap dance" for a patron of the establishment that satisfied the offense's requirement that an "act of sexual contact" had occurred. However, the circuit court held that the acts occurred in a separate area or room within which only the participants were present and the view was substantially or totally obscured. The trial court erroneously concluded the sexual contact did not occur in a public place or public view.

Section 5-14-111(a)(3), in pertinent part, defines public sexual decency when a person, in a public place or public view, engages in an act of sexual contact. Ark. Code Ann. § 5-14-101 (Repl. 1997) defines public place, public view, and sexual contact as follows:

"Public place" means a publicly or privately owned place to which the public or substantial numbers of people have access;

"Public view" means observable or likely to be observed by a person in a public place;

"Sexual contact" means any act of sexual gratification involving the touching, directly or through clothing, of the sex organs, or buttocks, or anus of a person or the breast of a female.

In short, the trial court misinterpreted the foregoing statute in ruling Ashley's acts were not in public view or in a public place. The commentary to § 5-14-101 states in relevant part as follows: " 'Public place' is defined broadly to include any locality to which substantial numbers of people have access. . . ." Moreover, the commentary provides that " 'public view' includes all that can be seen by a person in a public place . . . and it is the location of the viewer, not the situs of the activity viewed, that determines the public character of the view."

Ashley stipulated she engaged in topless dancing at the Centerfold Club where patrons paid a cover charge to enter the common area. It was from this public place that patrons could view Ashley engage in "lap dancing" with a patron behind a beaded curtain. Ashley stipulated that State witnesses would testify that it was possible for people to see the "lap dancing" act through the curtain.

Apparently, this court chooses not to interpret Arkansas's public sexual indecency statutes. In doing so, this court tacitly allows such clubs, open to the public, to continue to operate contrary to law. This court should assume jurisdiction of this appeal and enunciate its clear interpretation of these laws.

For the above reasons stated, I would assume jurisdiction of this appeal and reverse the trial court.